# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOS GARCIA NIETO,<br><br>  Petitioner,<br><br>  v.<br><br>GARY SWARTHOUT, Warden,<br><br>  Respondent. | Case No.  1:14-cv-00571-LJO-SAB-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet., ECF No. 1). Respondent is the Warden of California State Prison, Solano. He is represented in this action by Lewis Martinez, Esq., of the California Attorney General's Office.

**I.**

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Superior Court of California, Kings County, following his plea of nolo contendere and conviction on the following charges: one count of gross vehicular manslaughter while intoxicated (Cal Pen. Code § 191.5(a); Veh. Code § 23578); driving under the influence of alcohol and/or drugs with a blood-alcohol content of .15 percent or

higher and causing great bodily injury or death (Cal Pen. Code § 12022.7(a); Veh. Code § 23153(a), § 23558, § 23578); one count of driving under the influence of alcohol and/or drugs with a blood-alcohol content equal to or greater than .08 percent and causing great bodily injury or death (Cal Pen. Code § 12022.7(a); Veh. Code § 23153(b), § 23558, § 23578); and one count of driving on the wrong side of the roadway (Cal Veh. Code § 21650). (Pet., Ex. A.)  On September 26, 2011, he was sentenced to serve a total term of 16 years 8 months in prison.  (Id.)

Petitioner timely filed a notice of appeal.  Petitioner's appeal was denied on January 14, 2013.  (LD[1] 11).  On July 17, 2013, Petitioner filed a petition for writ of habeas corpus in the Kings County Superior Court.  (LD 12).  The petition was denied on September 12, 2013.  (LD 13).  On October 8, 2013, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied on November 21, 2013.  (LDs 14 and 15).  On December 6, 2013, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (LD 16).  The petition was denied on February 19, 2014.  (LD 17).

Petitioner filed the instant federal petition for writ of habeas corpus on April 4, 2014.  (ECF No. 1).  Respondent filed an answer to the petition on July 9, 2014.  (ECF No. 19).  Petitioner filed a traverse on August 13, 2014.  (ECF No. 21).

## II.

## STATEMENT OF FACTS[2]

> On the afternoon of April 24, 2010, Kings County Deputy Sheriff Samuel Weimer responded to the scene of a fatal vehicular accident near Highway 269 and Interstate Freeway 5. A white Chevrolet Avalanche and a Ford Cobra Coupe were involved in the accident. Deputy Weimer and other officers determined that appellant was driving the Avalanche southbound on Highway 269 and Jack Bolding was driving the Cobra northbound on the same roadway. Appellant veered on the roadway on the west side and caused the Avalanche to straddle the raised asphalt. He attempted to steer his vehicle back onto the roadway and over steered in an

---

[1] LD refers to the documents lodged by Respondent with his Answer on July 9, 2014.
[2] The Fifth District Court of Appeal's summary of the facts in its January 14, 2013, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).  Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the state appellate court. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

attempt to get the Avalanche over the raised curb. Because of the over steering, the Avalanche went into an uncontrolled skid and traveled into oncoming northbound traffic. The Avalanche struck Bolding's Cobra head-on in the northbound lane.

American Ambulance personnel found appellant face down on the ground behind the Avalanche. He was transported to Fresno Regional Community Medical Center by helicopter. Weimer noticed open beer cans in the back of the Avalanche and a few more open cans on the roadway and in the dirt next to the roadway. Officers found Bolding deceased in the front driver's seat of the Cobra. His body had sustained multiple injuries and was slumped over toward the passenger side of the front seat. Officials later determined that Bolding died from blunt force trauma.

Weimer contacted a second victim, Ramon Fuerte, who was a passenger in the Avalanche. Fuerte emitted a strong odor of alcohol, had bloodshot, watery eyes, and appeared to be intoxicated. Fuerte said he was asleep at the time of the collision and did not know what had happened. Fuerte said he and defendant were returning from Kettleman City. In response to questioning by Weimer, Fuerte said appellant had been drinking constantly since the preceding day. Fuerte had a small laceration on the right side of his face directly behind his eye. He also had a laceration on his left forearm but declined medical attention.

Emergency medical technician J. Mazzaserro arrived at the scene with her partner, J. Price, shortly after the collision occurred. Upon arrival, she provided assistance to the occupants of the Cobra. Mazzaserro declared Bolding deceased at 4:01 p.m. Price checked on the passengers of both vehicles and determined that Jamee Bolding, the passenger in the Cobra, needed more medical attention than the others. According to Mazzaserro, Jamee Lynn Bolding was not breathing, but she did have a pulse when paramedics arrived. Mazzaserro performed several life support and first aid procedures on Jamee Bolding, who was eventually airlifted to Fresno Community Regional Medical Center.

At 6:32 p.m., Weimer contacted appellant at the hospital. An attending physician advised Weimer that appellant has sustained a broken left arm and some minor scrapes on his chest and stomach area. Hospital staff also informed Weimer that appellant was still intoxicated. When Weimer finally spoke with appellant, he could smell a strong odor of alcohol. Appellant's eyes were bloodshot and watery, and his speech was slurred. Appellant initially said he could not remember anything about the collision. He eventually said that Jack Bolding pulled into his lane, and he could not miss him. When Weimer asked about his alcohol consumption before the collision, appellant said he had consumed about three beers but could not remember any other details. Hospital personnel took a blood sample from appellant at about 7:19 p.m. and it yielded a blood-alcohol content of 0.25 percent.

On the morning of April 27, 2010, Deputy Sheriff Perla Trejo contacted appellant at the medical center. Appellant reported that

he was traveling southbound on Highway 269 at 3:00 p.m. on the day of the collision. Appellant said he and Fuerte were on their way home from picking onions in the Huron area. Appellant said he had one or two beers around noon but did not have anything to eat. Appellant claimed he could not drink heavily because he suffered from diabetes and leukemia. Appellant said he was traveling 55 miles per hour when he saw a car move into his lane at a much faster speed. Appellant said he swerved to the left to avoid a head-on collision. Appellant told Trejo, " 'If I didn't move, he would've hit me.' " Appellant said everything happened so fast that he did not remember any details about the other car. According to appellant, the damage to his vehicle was on the front passenger side because he turned to the left to avoid the collision.

Appellant said he was ejected from his vehicle and believed the injury to his shoulder occurred when his shoulder hit the steering wheel at the time of ejection. Upon further questioning by Trejo, appellant said he was wearing his seatbelt but removed it when he got out of the vehicle. Appellant said he was very weak and unable to stand up at the time he got out of the vehicle. He claimed that he has a clear mind and had not consumed anything to impair his driving. Appellant admitted there was some alcohol in his system but maintained it was not enough to impair him. Appellant also said that he and Fuerte were collecting cans and that is why there were beer cans in his vehicle.

The following day, Trejo contacted Fuerte at his residence. Fuerte said appellant stopped by his home on the morning of April 24, 2010, and invited him to join him on a trip to Huron to pick up his paycheck. Fuerte said he had a beer before appellant picked him up but claimed that appellant was not intoxicated and that he, Fuerte, felt safe enough to get into appellant's vehicle. Contrary to his earlier statements to Weimer, Fuerte said appellant may have consumed one beer before arriving at Fuerte's home. After the pair picked up the paycheck, they went to the Huron home of appellant's cousin and appellant drank a 12–ounce can of Coors Light beer. Appellant and Fuerte spent about one hour in Huron, and then they drove back home. On their way home, Fuerte fell in and out of sleep. At one point, Fuerte heard appellant say, " 'A car keeps crossing into our lane.' " Shortly after the collision occurred, Fuerte confirmed that he was wearing his seatbelt but did not know whether appellant was wearing his. Fuerte did not believe that appellant was under the influence at the time of the collision. Trejo sought clarification of Fuerte's statement about appellant drinking "constantly." Fuerte explained that appellant was known to drink daily and to consume a beer and drive home after visiting with Fuerte. Trejo said appellant's drinking had become a problem with friends to the point where some friends would not invite him over any longer.

On March 24, 2011, Weimer contact Ellen Bolding, the mother of Jamee Lynn Bolding. Ellen reported that her daughter suffered two skull fractures, a crushed left cheekbone, a broken left jaw, damage to two front teeth, a broken collarbone, the removal of her left kidney, an injury to lower back vertebrae which required Jamee to

wear a back brace for 45 days, two broken arms, two broken legs, and double vision.

## III.

## DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Kings County Superior Court, which is located within the jurisdiction of this Court. See 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA, and therefore, is governed by its provisions.

### B. Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 131 S.Ct 770, 178 L.Ed.2d 624 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established

1 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71
2 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this
3 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
4 of the time of the relevant state-court decision." Williams, 592 U.S. at 412.  "In other words,
5 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles
6 set forth by the Supreme Court at the time the state court renders its decision." Id.  In addition,
7 the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal
8 principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in
9 . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of
10 review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v.
11 Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v.
12 Musladin, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an
13 end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S.
14 at 126; Moses, 555 F.3d at 760.

15 If the Court determines there is governing clearly established Federal law, the Court must
16 then consider whether the state court's decision was "contrary to, or involved an unreasonable
17 application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28
18 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ
19 if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
20 question of law or if the state court decides a case differently than [the] Court has on a set of
21 materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at
22 72.  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite
23 in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's
24 Third New International Dictionary 495 (1976)).  "A state-court decision will certainly be
25 contrary to [Supreme Court] clearly established precedent if the state court applies a rule that
26 contradicts the governing law set forth in [Supreme Court] cases." Id.  If the state court decision
27 is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed
28 under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en

banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76. The writ may issue only "where there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir. 2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

The AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). However, a state court factual finding is not entitled to deference if the relevant state court record is

1 unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963),
2 *overruled by*, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

3     **C.    Review of Claims**

4         1.    <u>Ineffective Assistance of Counsel During Plea Negotiations</u>

5 Petitioner contends that he was denied the effective assistance of counsel during plea
6 negotiations, because he was unaware of the maximum sentence exposure that he faced. This
7 claim was presented to the Kings County Superior Court, California Court of Appeal, and
8 California Supreme Court in post-conviction petitions. On September 12, 2013, the Kings
9 County Superior Court denied the claim on the merits in a reasoned decision. (LD 13). The
10 California Court of Appeal and California Supreme Court summarily denied the petitions, and
11 therefore, it is presumed these courts denied the claim on the same basis set forth by the Kings
12 County Superior Court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

13 The Kings County Superior Court stated in its decision on Petitioner's habeas corpus
14 petition:

> Petitioner entered a no contest plea on August 26, 2011 to all counts set forth in the information. During the entry of plea hearing, Petitioner confirmed to the court that he understood that his maximum potential exposure to be 19 years and 8 months. (Transcript, 8:22-27.) Petitioner also affirmed that he was not promised anything different in connection with his decision to enter a no contest plea. (Transcript, 13:8-10.) Petitioner further admitted his violation of the relevant statutes and the facts necessary to establish his guilt of the same. Accordingly, Petitioner's allegation that he was somehow unaware of his maximum potential sentence in this case, is unsupported by the record.
> Furthermore, the sentence imposed in Kings County Superior Court Case No. 10CM8636 appears wholly consistent with the terms of Petitioner's entry of plea.

23 (LD 13).

24 A plea of guilty is constitutionally valid only to the extent it is "voluntary" and
25 "intelligent" and must be made with sufficient information of the relevant circumstances and
26 likely consequences resulting from the waiver of certain constitutional rights. Brady v. United
27 States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242-244 (1969).
28 Voluntariness is determined by looking at the tangible evidence in the record, as determined by

the totality of the circumstances surrounding the plea. Id. The defendant must make the decision "with the help of counsel, [and] rationally weigh the advantages of going to trial against the advantages of pleading guilty." Brady v. United States, 397 U.S. at 750.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; Harrington, 131 S.Ct. at 788 ("The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Richter, 131 S.Ct. at 787 (internal citation omitted). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard was incorrect, but whether that determination was unreasonable-a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the

state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The decision to reject a plea bargain offer and go to trial is a critical stage of the proceedings. In Hill v. Lockhart, 474 U.S. 52, 56-57 (1985), the Court held that the voluntariness of a guilty plea depends on the adequacy of counsel's legal advice. The first "inquiry is whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002). Then the Court must determine whether, "but for counsel's errors, [the defendant] would have pleaded guilty and would not have insisted on going to trial. Id. If the defendant has been informed of the plea offer, the question to determine is whether counsel's "advice was within the range of competence demanded of attorneys in criminal cases. Id. at 880 (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)). Thus, Petitioner "must demonstrate gross error on the part of counsel[.]" Turner, 281 F.3d at 880 (quoting McMann, 397 U.S. at 771). A defendant's statements made in open court at the time of a plea are entitled to great weight. See Chizen v. Hunter, 80 F.2d 560, 562 (9th Cir. 1986).

The Court notes that although Petitioner claims his plea agreement was violated, he does not state the alleged terms of his plea agreement. Petitioner claims that the State changed the terms after the fact, but Petitioner never specifically states how the State changed the terms of the plea agreement, except Petitioner claims that the prosecutor changed the agreement when she agreed with the probation report about the recommended sentence. (Traverse at 2).[3]

The record in this case belies Petitioner's claims that he was unaware of the maximum sentence that he faced. The trial court advised Petitioner that he faced a maximum potential

---

[3] Page numbers refer to the ECF page numbers.

1   exposure of 19 years and 8 months in prison if he entered a no contest plea. (RT[4] 208:22-27).
2   Petitioner then proceeded to enter a no contest plea. (RT 213:14 to 216:23). Petitioner
3   affirmatively stated that he had not been promised anything else in connection with his plea and
4   the penalty or punishment that he would receive. (RT 213:1-10). Petitioner did not object or
5   move to withdraw his plea during sentencing when he found out that he was being sentenced to a
6   total term of 16 years and 8 months. (RT 330:1-2). In addition, Petitioner did not receive the
7   maximum sentence which he faced, because he could have been sentenced to an additional three
8   years in prison. Petitioner claims that his attorney negotiated to reduce the sentence in exchange
9   for a plea of guilty, but the record is clear that the prosecution did not offer a plea deal on the
10  date Petitioner entered his no contest plea. Therefore, Petitioner could have been sentenced up to
11  the maximum sentencing exposure of 19 years and 8 months by entering a no contest plea. In
12  addition, there is nothing in the record before this Court to indicate that the prosecution offered a
13  plea deal for a lesser sentence prior to the date of the no contest plea.

14          The state court reasonably concluded that it had no evidentiary basis to find that
15  Petitioner was misadvised regarding the sentence he would serve if he entered a no contest plea.
16  Petitioner has offered no evidence that he was given the wrong information regarding his
17  maximum sentencing exposure other than his own self-serving declaration. During the
18  discussion on the record before the entry of the no contest plea, Petitioner's counsel stated that
19  he had authority to support an argument at sentencing for a sentence below the maximum. (RT
20  207:13-18). The Court then reiterated that while Petitioner's counsel stated that he had legal
21  authority to support a lower sentence, Petitioner could receive up to 19 years and eight months in
22  prison. (RT 208:22-25). Petitioner indicated that he understood. (RT 208:25-27). Furthermore,
23  Petitioner's statement that his counsel told him that he would be sentenced to a lesser sentence
24  may have merely been an optimistic prediction. There is nothing to suggest that Petitioner's
25  counsel informed him of a legal impossibility.

26          Even if Petitioner's trial counsel were to have erred in advising Petitioner that he would
27  receive a lesser sentence, Petitioner's claim can only succeed if it is reasonably likely that he

28  ----------
    [4] RT refers to the Reporter's Transcript.

1 would not have entered a no contest plea absent the errors, and gone to trial. See <u>Strickland</u>, 466
2 U.S. at 696. The record indicates that the prosecution's case was strong, as there were witness
3 statements that Petitioner had swerved into oncoming traffic after Petitioner went into the
4 shoulder on his side of the road, which was confirmed by the evidence at the scene and the
5 officers' investigation. Petitioner is able to point out little evidence that he could have used in
6 support of his defense. In addition, Petitioner benefited from entering a no contest plea in this
7 case, instead of proceeding to trial. Petitioner's counsel had argued that Petitioner was
8 remorseful for his actions. (RT 315:8-10). The Court considered Petitioner's early
9 acknowledgement of wrongdoing as a mitigating circumstance. (RT 328:7-13). On appeal,
10 Petitioner argued that he should have been sentenced to concurrent terms of imprisonment
11 because the two mitigating factors, his lack of a prior criminal record and his early
12 acknowledgement of wrongdoing, outweighed any aggravating factors for whether to impose
13 concurrent or consecutive terms. (LDs 8 and 10). Therefore, Petitioner cannot show that it is
14 reasonably likely that he would not have entered a no contest plea absent any alleged errors of
15 counsel.

16 Thus, the state court's determination of this issue was not contrary to, or an unreasonable
17 application of, clearly established Supreme Court precedent, and this claim must be denied.

18     2.    <u>Specific Performance of the Plea Agreement</u>

19 Petitioner claims that his trial counsel was ineffective for not seeking specific
20 performance of the terms of his plea agreement when the plea agreement was violated.
21 Petitioner alleges that "regardless of how trained attorneys or judges understand the terms 'plea
22 bargain,' petitioner was encouraged to and actually and reasonabl[y] did understand it
23 differently." (Pet.). Petitioner contends that the prosecutor changed the agreement when she
24 agreed with the probation report about the recommended sentence. (Traverse at 2). However,
25 the record clearly contradicts Petitioner's claim.

26 As previously stated, the record is clear that Petitioner did not enter a plea in exchange
27 for a lesser sentence. Petitioner was aware that the prosecution was seeking the maximum
28 sentencing exposure in exchange for his no contest plea, and the prosecution never put any plea

12

deal for a lower sentence on the record. (RT 201:26 to 202:6). Petitioner has failed to show how his no contest plea was violated. Petitioner was sentenced within the terms of the sentencing exposure that was stated at the time he entered his no contest plea. Therefore, Petitioner was sentenced in accord with his no contest plea, and this claim must be denied.

### 3. Ineffective Assistance of Counsel for Failure to Investigate

Petitioner contends that trial counsel was ineffective for failing to conduct a prompt investigation of the circumstances of the case and explore all facts relevant to the merits and penalty, so that Petitioner could make an informed choice. (Pet. at 8). It appears that Petitioner claims that his counsel did not conduct minimal research of the statute governing plea eligibility. (Traverse at 7). However, Petitioner offers no support for his contention that his trial counsel did not conduct an investigation of the statutes governing plea bargains, or how any additional investigation would have changed the result of his sentence. Petitioner's counsel vigorously argued that Petitioner should have been sentenced to probation, or to a lesser term of imprisonment, but the court sentenced Petitioner to 16 years eight months in prison. Petitioner chose to enter a no contest plea after he was advised as to the maximum sentence he faced. Petitioner's counsel attempted to have Petitioner sentenced to a lesser term or even a non-custodial term, but he was unsuccessful. Petitioner fails to show how any further research of sentencing statutes would have changed the result of the sentence.

Petitioner also argues that his trial counsel failed "to follow up readily available investigative leads regarding Petitioner's intoxication at the time of the accident; to adequately investigate lay and expert witnesses who were available to testify as to Petitioner's intoxication; and to present a defense of a traffic accident which would have mitigated Vehicular Manslaughter." (Pet. at 18).

Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Strickland, 466 U.S. at 691; Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001). However, the duty to investigate and prepare a defense is not limitless. See Strickland, 466 U.S. at 691. An attorney is not required to interview every conceivable witness or to examine every possible piece of evidence. Id. The

13

Ninth Circuit has observed that "Courts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial." Lambert v. Blodgett, 393 F.3d 943, 982 (9th Cir. 2004).

Here, Petitioner's claims are too speculative to warrant relief. Although Petitioner contends that his counsel should have interviewed the passenger in his car at the time of the accident, Fuerte, he fails to demonstrate that Fuerte was willing to testify at trial or what exact testimony he would have offered at trial. See, e.g., Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000) (no ineffective assistance of counsel for failure to call witnesses where petitioner did not identify an actual witness, provide evidence that the witness would testify, or present an affidavit from the alleged witness); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997). Petitioner fails to state what additional information his counsel could have discovered during the pretrial period by interviewing Fuerte that Fuerte did not state to the officers who were investigating the crash. Furthermore, the statements Fuerte made to officers had the potential to harm Petitioner's defense as Fuerte reported to an officer after the crash that Petitioner had been drinking constantly since the preceding day. Several days later, Fuerte clarified his statement about Petitioner drinking constantly, by telling an officer that he meant that Petitioner was known to drink daily and to consume a beer and drive home after visiting with him. Also, it could have been a strategic decision not to interview Fuerte as a defense witness. If the defense called Fuerte as a witness, the prosecution could have cross-examined him on his earlier inconsistent statement, possibility reducing his credibility as a witness to the detriment of Petitioner.

Petitioner argues that his counsel failed to follow-up on leads and to interview lay and expert witnesses about Petitioner's intoxication. However, Petitioner does not state what information these witnesses could have provided or what information would have been revealed had Petitioner's counsel interviewed potential lay and expert witnesses regarding Petitioner's intoxication that would have supported a defense and changed the outcome at trial. Petitioner claims that an expert could have testified that Petitioner's blood alcohol content would not have

reached .25 at the time of the accident.  See Dows, 211 F.3d at 486-87.  Petitioner does not provide any credible facts or support for his statement that an expert would have reached the opinion that Petitioner's blood alcohol was not .25 at the time of the accident.  Petitioner states that an expert would have reached this conclusion based on Petitioner's pattern of drinking and typical behavior, but there is no indication that an expert could have formed an opinion solely from the statements of Petitioner and Fuerte to refute the prosecution's blood alcohol evidence.  Petitioner's counsel made cogent pre-trial arguments about Petitioner's blood alcohol content not being .25 and that the blood alcohol results were not entitled to the presumption of accuracy because Petitioner's blood was taken more than three hours after the time of the accident.  Any cross-examination of the prosecution's intoxication expert could have addressed the same points that a defense expert on intoxication would have provided.  Furthermore, Petitioner's defense and any potential defense experts on intoxication had little chance of success compared to the prosecution's evidence.  Therefore, Petitioner cannot show that a defense expert on intoxication was unlikely to change the outcome at trial.

     Petitioner argues that his counsel should have conducted an investigation into the car that Petitioner alleges drove on the wrong side of the road and caused him to swerve into the victim's car.  Petitioner states that he does not remember any details about this other alleged car.  Petitioner also doesn't state how his attorney could have found this alleged car.  Therefore, Petitioner provides no evidence that this car actually exists, other than from Petitioner's self-serving declaration.  In addition, witnesses observed the collision and did not mention any other cars being involved in or causing the collision.  At the preliminary hearing on March 28, 2011, Deputy Samuel Weimer testified that witness Paul Jacobsma told him that he was driving northbound on Highway 269 following the victim's Cobra.  (CT at 17-19, LD 1).  Mr. Jacobsma saw the Petitioner's Avalanche swerve off the roadway into the shoulder area and then into the northbound lane of oncoming traffic where it collided with the victim's car.  (CT at 19-20).

     Furthermore, Petitioner has not demonstrated that but for the discovery of that "additional evidence," he would not have entered a no contest plea.  The evidence in the record demonstrated that Petitioner was intoxicated at the time he was driving, that Petitioner's vehicle

15

1  swerved into oncoming traffic, and that he had been drinking that day, although Petitioner argues
2  that he only had a couple of beers.  Also, Petitioner sought probation and concurrent prison terms
3  because of two mitigating circumstances, Petitioner's early acknowledgement of guilt and lack
4  of a prior record.  If Petitioner had not pleaded guilty, he would not have been able to avail
5  himself of the mitigating circumstance of early acknowledgement of guilt, and he could have
6  faced a stiffer punishment.  Therefore, any error by counsel in investigating the case is harmless,
7  because Petitioner has not shown that there were facts to support a defense where he would not
8  have entered a no contest plea, and would have proceeded to trial in light of the advantages of
9  entering a no contest plea.  Thus, Petitioner has not demonstrated any prejudice arising from
10 counsel's allegedly deficient pretrial investigation.

11     Therefore, Petitioner has not shown either deficient performance or prejudice under the
12 Strickland standard.  Also, based on the record and the state court's reasoned decision, it would
13 not have been apparent to all reasonable jurists that Petitioner's counsel ineffective in his pretrial
14 investigation.  Accordingly, the state court rejection of Petitioner's claim was not contrary to or
15 an unreasonable application of clearly established Supreme Court precedent.  See 28 U.S.C. §
16 2254(d)(1).  Therefore, this claim must be denied.

## IV.

## RECOMMENDATION

19     Accordingly, the Court HEREBY RECOMMENDS that:
20  1. The petition be DENIED; and
21  2. The Clerk of the Court be DIRECTED to enter judgment for Respondent and close the
22     case.

23     This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,
24 United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and
25 Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of
26 California.  Within thirty (30) days after service of the Findings and Recommendation, any party
27 may file written objections with the court and serve a copy on all parties.  Such a document
28 should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies

to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 24, 2014**

UNITED STATES MAGISTRATE JUDGE